IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KATHY GUINN,                          :
                                      :
                                      :
        Plaintiff,                    :
                                      :
v.                                    :        CIVIL ACTION NO.
                                      :        1:18-CV-3119-AT
NORFOLK SOUTHERN RAILWAY              :
COMPANY,                              :
                                      :
        Defendant.                    :

## ORDER

This matter is before the Court on Defendant Norfolk Southern Railway Company's Motion for Partial Summary Judgment [Doc 70]. Norfolk Southern also filed Motions to Limit or Exclude the Testimony of Experts Eckardt Johanning, M.D., Msc, Ph.D. [Doc. 66], Steven Filbert [Doc. 67], Terry Cordray [Doc. 68], and Colon Fulk [Doc. 69]. For the reasons that follow, The Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and the Court will direct the parties to attend mediation of the remaining claims.

## I.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c).

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting the Advisory Committee's note to FED. R. CIV. P. 56). "[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record before the court] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to establish, by going beyond the pleadings, that there is indeed a genuine issue as to the material facts its case. *Thompson v. Metro. Multi–List, Inc.*, 934 F.2d 1566, 1583 n.16 (11th Cir. 1991); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). A dispute of material fact "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita*, 475 U.S. at 587.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992); *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). The Court must avoid weighing conflicting evidence. *Liberty Lobby*, 477 U.S. at 255; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the

motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *Pepper v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989). But where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir. 1989) (citation omitted).

The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II.    FACTUAL BACKGROUND[1]

On July 8, 2015, Ms. Guinn was injured when she fell from a train car while working as a conductor trainee at Norfolk Southern's training facility in McDonough, Georgia. (Def.'s Statement of Material Facts for Which There is No Genuine Issue to Be Tried ("SUMF") ¶ 1, 13, Doc. 70-10; Pl.'s Resp. to Pl.'s Statement of Material Facts For Which There Is No Genuine Issue To Be Tried ("RSUMF") ¶ 1, 13, Doc. 82; Pl.'s Additional Statement of Facts Which Are Material

---

[1] Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, the court must review all facts and inferences in light most favorable to non-moving party). This statement does not represent actual findings of fact. *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000) ("We . . . have repeatedly stressed that the 'facts', as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case."). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

and Present a Genuine Issue for Trial ("SAMF") ¶ 35 (Doc. 82); Def.'s Resp. to Aditional Statement of Facts Which Are Material and Present a Genuine Issue for Trial ("RSAMF") ¶ 35, Doc. 91). Ms. Guinn contends that Norfolk Southern is responsible for the injuries she sustained based on, among other things, Norfolk Southern's negligent training, negligent assignment, and failure to abide by the Safety Appliance Act. (*See generally*, Compl. (Doc. 1)).

### A.    Ms. Guinn's evaluation and training

Prior to her hire, Norfolk Southern provided the Plaintiff the name and address of an independent medical clinic with which it contracted at the time to arrange and attend a physical examination and self-report her medical conditions or treatment history and social and family history in connection with the physical examination and drug screening. (Pl.'s SAMF ¶ 31 (Doc. 82); Def.'s RSAMF ¶ 31, citing Deposition of Kathy Guinn, at 99-108 (Doc. 72)). Ms. Guinn scheduled and attended this physical examination, where, according to Norfolk Southern, "she disclosed no potentially disqualifying medical conditions." (*Id.*). Following her physical examination, Ms. Guinn was cleared to participate in conductor training. (*Id.*; Dep. Guinn at 123).

Before participating in field training exercises, Plaintiff passed a "hang test" which required her to demonstrate the ability to hang on the side of a railcar ladder with one hand for two minutes and 30 seconds. (Def.'s SUMF ¶ 2, Pl.'s RSUMF ¶ 2). Specifically, "[t]he hang test is two sessions of one minute and 15 seconds, one session for each hand, with a 5-10 second break in between the sessions," and "the

trainee's feet are on the 'sill step'" (Pl.'s RSUMF ¶ 2, citing Dep. Guinn Ex. 8, Doc. 72 at 534). At her deposition, Ms. Guinn was unsure whether the test was on a railcar, and was not sure how far off the ground the test was, because the examinees were "up on a platform." (Dep. Guinn at 133:1–14).

In any case, the Parties agree that passing the "hang test" is a prerequisite to further conductor training. (Def.'s SUMF ¶ 3, Pl.'s RSUMF ¶ 3). Plaintiff testified[2] that she had no problem completing the hang test, unlike some of her fellow trainees. (*Id.* ¶ 4). Ms. Guinn then successfully completed field training exercises including throwing switches, hooking and unhooking a knuckle, tying and releasing a low handbrake, and coupling air hoses. (*Id.* ¶ 5). Ms. Guinn had no problem tying and releasing the low handbrake or coupling air hoses. (*Id.* ¶ 6). She, like another trainee, had some difficulty hooking and unhooking the knuckle, but she ultimately completed the task. (*Id.* ¶ 7).

### B. Ms. Guinn's fall

On the date of the fall, Ms. Guinn's group of trainees was assigned to perform a high handbrake exercise on an open top hopper railcar. (*Id.* ¶ 8). Jonathan Elliott, her trainer, provided a handwritten, undated statement setting forth his account

---

[2] In Plaintiff's RSUMF (Doc. 82), Ms. Guinn objects to Norfolk Southern's formulation of several of the statements in its SUMF because the statements begin with "[witness] testified [to a fact]" rather than stating the fact itself. While the Court agrees that this additional witness prism raises the complexity of a component of the summary judgment process designed to reduce complexity, the Court does not agree that it rises to the level of a violation of the local Local Rules. LR 56.1, NDGa. In light of the summary judgment standard's requirement that the Court construe facts in the light most favorable to the nonmovant, where there is no prejudice to Plaintiff, the Court will simply deem the underlying fact admitted unless in dispute. Otherwise, the Court will instead note who testified to what.

of what occurred. (Doc. 69-8). The Parties stipulated to a transcription of the contents of that statement. (Doc. 100). In that statement, Mr. Elliott states that before starting the exercise, he "demonstrated how to apply and release high vertical mounted handbrakes." (Doc. 100).[3] Per his statement, Mr. Elliott asked Ms. Guinn "if she was comfortable and she replied yes." (*Id.*). What happened next is in dispute. Ms. Guinn "testified that she was instructed to mount and climb the side ladder of the railcar until her feet were resting on the second to highest rung." (Pl.'s SAMF ¶ 32; Def.'s RSAMF ¶ 32). However, Norfolk Southern disputes this account, contending that Mr. Elliott testified that "that he did not instruct the Plaintiff to keep climbing to the second highest rung, that he would never have let her climb that high, and that he had never even seen anyone stand on a railcar with their feet on the second rung from the top."[4] (Def.'s RSAMF ¶ 32, citing Deposition of Jonathan Elliott, at 104–105 (Doc. 76)).

According to Ms. Guinn's account, "she mounted and climbed the side ladder of the open top hopper railcar until her feet were resting on its second to highest rung." (Def.'s SUMF ¶ 9; Pl.'s RSUMF ¶ 9). Ms. Guinn "testified that she then transitioned from the railcar's side ladder to its end ladder at that same height, which is two rungs higher than the level o[f] the brake platform." (*Id.* ¶ 10

---

[3] In his statement, Mr. Elliott asked "all CTs" if they "need[ed] water, and if so," encouraged them to "feel free to get it at any time." He also, perhaps unhelpfully, "reminded them that they do not [sic] fall off equipment at any time." (Doc. 100).

[4] Norfolk Southern contends that in any case, the dispute is not material, because Ms. Guinn descended to the brake platform before falling. However, whether any irregularity in Ms. Guinn's attempt contributed to her fall is a question for the jury.

(alteration in original)). She testified "that she then descended the end ladder until her right foot was resting on the brake platform." (*Id.* ¶ 11). With "her right foot on the brake platform, she spun the brake wheel to tie and release the handbrake." (*Id.* ¶ 12).

What happened next is not clear. Ms. Guinn testified that after releasing the handbreak, she fell to the ground. (*Id.* ¶ 13). However, per Mr. Elliott's written statement and testimony, she first "reached around and planted her foot on the grab iron," then "she started to come around" and then "fell off the car." (Pl.'s SAMF ¶ 36, Def.'s RSAMF ¶ 36; Statement of Jonathan Elliott (Doc. 100); Dep. Elliot at 25–26).

The Parties dispute Ms. Guinn's condition at the time of the fall. At her deposition, Plaintiff testified that she was tired and hot at the time, but otherwise clearheaded:

```
 4  Q Okay. And at the time that you were attempting
 5 to apply and release the handbrake and come down from
 6 the car, you were feeling physically fine?
 7  A Yes.
 8  Q You weren't fatigued or even dizzy or anything
 9 like that, you were clearheaded?
10 A I was clearheaded, a little hot.
11 Q Okay.
12 A A little tired, which I think everybody else
13 was also.
14 Q Okay. But nothing like you were -- you felt
15 like you were fatigued, exhausted, anything like
16 that?
17 A No.
18 Q And by no, meaning you didn't feel that way?
19 A No, you mean to collapse, or --
20 Q Yeah.
21 A -- couldn't go no further?
22 Q Right.
```

```
23 A No.
24 Q And by no meaning you weren't feeling that way?
25 A No, I was not feeling that way.
```

However, statements given by other trainees seem to indicate that "she looked exhausted and uncomfortable while on the car," (Dep. Elliot Ex. 3, Stmt. of Michael Teegarden) and that she appeared "to become very shaky" (*Id*. Ex 4, Stmt. of David Arrigo).[5]

The following picture of the railcar in question was Exhibit 9 to Ms. Guinn's deposition. The Court attaches it for ease of reference, but does not make any finding of fact as to the veracity of the annotations:[6]



---

[5] Norfolk Southern objects to the admissibility of these statements on hearsay grounds. However, the Court will consider these statements for the purpose of this motion only as it is likely that "the statement[s] could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)).

[6] The Parties dispute the condition of the fourth rung from the top on the side ladder. The Court addresses this dispute further in the section on the Safety Appliance Act below.

## C.     Norfolk Southern's procedures

The Parties do not dispute that, as part of its training program submitted to the Federal Railroad Administration and labor organizations (Def.'s SUMF ¶ 21, Pl.'s RSUMF ¶ 21),[7] "applying and releasing handbrakes" are among the "hands on skills activities" that are covered during training. (*Id.* ¶ 24). The Parties do not dispute that "[m]anually applying and releasing handbrakes are tasks necessary to be a Norfolk Southern conductor" and (*Id.* ¶ 26) that Norfolk Southern's procedure for manually applying and releasing handbrakes is set forth in its Safety and General Conduct Rule 1100, which is reproduced below in relevant part:

> **1100**. Unless an approved telescoping brake stick is used, mount the side ladder, climb to the level of the handbrake, and move on same level to end ladder. **EXCEPTION**: See **Rule 1074**.

> **1100(a)**. Stand with left foot on end ladder rung, right foot on brake platform, left hand on end ladder rung or top grabiron. With right hand grasping only the outer rim, rotate the brake wheel clockwise until slack is taken up, then give short pulls by using the legs until the necessary braking force is obtained. When applying final pressure, the outer rim should be gripped at the junction of the rim to spoke such that the spoke is on the side of the hand in the direction of pull to prevent hand slippage. To release a handbrake, assume the same position and operate the brake wheel or release lever.

> **1100(b)**. To dismount, reverse the mounting procedure.

(*Id.* ¶ 29 (emphasis in original)).

---

[7] Ms. Guinn objects to Norfolk Southern's statement that the FRA approved its training program because "whether the conductor certification training program was approved by the FRA because of the lack of comments is a question of law." (Def.'s SUMF ¶ 25, Pl.'s RSUMF ¶ 25). However, Ms. Guinn does not submit any evidence to dispute the underlying factual contention, that the training program was approved by the FRA. (*Id.*)

## III.   ANALYSIS

Norfolk Southern has filed four motions to exclude or limit the testimony of Ms. Guinn's proffered experts. Norfolk Southern's motion for summary judgment relies in part on excluding the testimony of the witnesses, and as such, the Court will consider the motions to exclude first.

### A.   Motions to Exclude or Limit the Testimony of Expert Witnesses

Norfolk Southern seeks to exclude or limit the testimony of Ms. Guinn's medical expert Eckardt Johanning, M.D., Msc, Ph.D. (Doc. 66), railroad industry expert Steven Filbert (Doc. 67), vocational expert Terry Cordray (Doc. 68), and railroad operating practices expert Colon Fulk (Doc. 69). Federal Rule of Evidence 702 governs expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

District courts have broad discretion to determine the admissibility of expert evidence under Federal Rule of Evidence 702.  *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).   In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court imposed on the trial courts a special gatekeeper role of ensuring that proffered expert testimony is both relevant and reliable before being admitted as evidence.  509 U.S. 579, 589 (1993); *Allison v.*

*McGhan Med. Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999). Accordingly, in determining the admissibility of expert testimony under Rule 702, the Eleventh Circuit has provided a rigorous three-part inquiry, instructing the trial courts to consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*U.S. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). The proponent of expert testimony bears the burden to show that her expert is qualified to testify competently regarding the matters he intends to address, the methodology by which the expert reached his conclusions is sufficiently reliable, and the testimony assists the trier of fact. *Frazier*, 387 F.3d at 1260 (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir.2002)). However, the gatekeeping function of the Court should not preclude expert testimony rooted in professional experience which the jury can properly weigh and evaluate with the benefit of effective cross examination by the opposing party. *See Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1334 (11th Cir. 2014) ("We have repeatedly stressed *Daubert's* teaching that the gatekeeping function under Rule 702 'is not intended to supplant the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof

are the traditional and appropriate means of attacking shaky but admissible evidence.'") (quoting *United States v. Alabama Power Co.*, 730 F.3d 1278, 1282 (11th Cir.2013).

## 1. Eckardt Johanning, M.D., Msc, Ph.D. [Doc. 66]

Norfolk Southern contends that Dr. Johanning has given two opinions in this case: the first about Ms. Guinn's medical condition after falling off of the train car, and the second about her suitability to perform the work of a conductor prior to the injury. It is this second opinion (Ms. Guinn's suitability for the job to begin with) to which Norfolk Southern objects.[8] Norfolk Southern contends that the Rule 26(a)(2)(B) report Ms. Guinn's counsel initially provided it did not contain the suitability opinion. Instead, the suitability opinion was disclosed in an amended report provided on the date of Dr. Johanning's deposition. The suitability opinion is set forth below:

> It is indeed a question, whether Ms. Guinn, who has a primarily sedentary work history, was a [sic] medically and physically fit to perform the regular work duties of a conductor job as I know it and

---

[8] At the end of Norfolk Southern's Brief in Support of Motion to Limit or Exclude Dr. Johanning's testimony, Norfolk Southern appears to take an unexpected turn to also challenge Dr. Johanning's opinions about Ms. Guinn's ability to obtain a job going forward on the grounds that such opinions were not disclosed and are outside of Dr. Johanning's expertise. (Br. at 12). Norfolk Southern's objections are baseless. Dr. Johanning's original report states that Ms. Guinn has "no residual capacity for any physical tasks, which do require ambulatory ability . . . [and this] includes driving of any commercial vehicles, lifting, bending, twisting, squatting, crawling, awkward body postures, climbing of stairs of ladders," etc. While Dr. Johanning is not a vocational expert and cannot opine on jobs that Ms. Guinn could work in the abstract, there is no serious question that as an occupational physician, he is qualified to answer whether Ms. Guinn is capable of performing a given occupation when presented with the physical demands of the job.

has been described in typical job description (see Appendix) and the railroad industry job analysis."

(Mot. to Exclude Johanning Ex. E.). Norfolk Southern seeks the exclusion of the suitability opinion for two reasons: "First, it was not disclosed in the report provided to Norfolk Southern and, therefore, should be excluded under Fed. R. Civ. P. 37. Second, the new opinion is too equivocal to assist the trier of fact." (Mot. to Exclude Johanning Br. at 4).

Plaintiff's counsel admits that the "initial version" of the report which did not contain the suitability opinion was inadvertently provided to Defendant's counsel, even though Plaintiff's counsel was in possession of the "final version" at the time. However, in response to Norfolk Southern's argument that the suitability should be excluded, Ms. Guinn argues that the "final report" may be considered as a supplemental report under Rule 26(e). Norfolk Southern disputes that "final report" constitutes a supplemental report under that rule.

Rule 26(a)(2)(B) requires a retained expert to prepare and sign a report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" A party that fails to provide this information "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(e) requires that "[a]ny additions or changes to [the Rule 26(a)(2)(B) report]. . . must be disclosed by the time the party's pretrial disclosures" are due. Fed. R. Civ. P. 26(e).

The Court need not determine whether the "final report" constitutes a supplemental rule under Rule 26(e), or whether Ms. Guinn's accidental failure to provide the final report was harmless, because the Court agrees that Dr. Johanning's suitability opinion is "equivocal," and therefore "does not assist the trier of fact." *Cf. Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1368 (M.D. Ga. 2007), *aff'd*, 300 F. App'x 700 (11th Cir. 2008).

Norfolk Southern argues that Dr. Johanning, by elucidating that "[i]t is indeed a question" whether Ms. Guinn was "medically and physically fit to perform the regular work duties of a conductor job," has merely raised a question that the jury will be asked to resolve. (Final Johanning Report at 10). When pressed at his deposition to elaborate, Dr. Johanning gave little more. Deposition of Eckardt Johanning, MD at 159:9 ("It's a question. That's my opinion."), 162:8–9 ("It's not more than what the sentence is."). At most, Dr. Johanning states "I can only say in hindsight I question their judgment." Dep. Johanning at 166:11–12. The Court agrees with Norfolk Southern. This rumination will not assist the trier of fact as it "offers nothing more than what lawyers for the parties can argue in closing arguments." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (citing 4 Weinstein's Federal Evidence § 702.03[2] [a].). Accordingly, Dr. Johanning's testimony is **LIMITED** such that he many not opine on Ms. Guinn's suitability for the conductor job prior to her injuries.

## 2. Steven Filbert [Doc. 67]

Norfolk Southern next seeks to exclude the opinions of Steven Filbert. Mr. Filbert is a former Norfolk Southern employee who worked as a brakeman and conductor for nine years, from 1999 until 2008, and was an approved trainer for conductors at Norfolk Southern's Elkhart facility after they finished at McDonough. (Mot. to Exclude Filbert, Br. at 5, Doc. 67-1; Resp. to Mot to Exclude Filbert at 5; Dep. Filbert at 87–88). Mr. Filbert has had a long career in the railroad industry, and has served as the legislative representative and lobbyist for the Local UTU (United Transportation Union) at the state level, as well as president, vice local chairman, and local chairman of the Local 1620. (Resp. to Mot to Exclude Filbert at 3, Doc. 80; Deposition of Steven Filbert at 15–17, 24–26, 31–32, Doc. 77).

Mr. Filbert did not provide a written report, and the extent of his expert disclosures are set forth below:

**Subject matter of expert testimony**: Mr. Filbert is expected to testify regarding the hazards of climbing a railcar to set and release a high handbrake and his experience as a Norfolk Southern Railway Company ("NS") conductor regarding handbrakes

**Facts**: Mr. Filbert understands plaintiff was injured in training in Georgia when she fell from the ladder while training on setting and releasing a high hand brake. He was a conductor for many years at the Elkhart Yard for NS as well as the legislative representative for the UTU local. He is expected to testify to the custom and practice at NS regarding brake sticks. NS did not permit employees to climb on rail cars to set hand brakes. NS provided brake sticks and required employees to use brake sticks to set and release hand brakes.

**Opinions**: Since NS employees are not permitted to climb rail cars, there is no logical reason to require an employee in training to climb rail cars to the top of the rail car, cross over, to set and release a high hand brake. Fall from heights is a recognized hazard in the rail industry. In Filbert's opinion, NS did not provide plaintiff with a reasonable safe place to work for these reasons.

(Pl.'s Rule 26(a)(2) Disclosures at 4, Doc. 31).

Norfolk Southern raises the usual invocation of objections under Rules 26 and 37 regarding Ms. Guinn's disclosures of Mr. Filbert's opinions. However, as an initial matter, the Court is concerned that Mr. Filbert is offering an expert opinion without preparing a report, ostensibly meaning that he was not "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(A); (*See* Dep. Filbert at 13:9–11 ("Q. Okay. Are you being paid a fee for your time in this case? A. No."). However, Mr. Filbert has previously worked as an investigator at Plaintiff's counsel's prior law firm. In any case, Norfolk Southern does not appear to contend that Mr. Filbert should have prepared a written report, only that his opinion should be excluded under Federal Rule of Civil Procedure 37 and Federal Rule of Evidence 702.

Mr. Filbert certainly has experience, but Ms. Guinn has not laid the foundation to apply his experience to the McDonough railroad operation and employee training in 2015. Mr. Filbert admits he has not kept up with rules since he retired from Norfolk Southern in 2008. (Dep. Filbert at 42:19–21). The fact that his division mandated the use of brake sticks rather than placing employees in the position of climbing on rail cars to handle braking does not provide a foundation

for concluding, systemwide, that "there is no logical reason to require an employee in training to climb rail cars to the top of the rail car, cross over, to set and release a high hand brake." In fact, when asked if the use of brake sticks was mandated on a systemwide basis, Mr. Filbert answered he had "no idea if they did it or not." (Id. at 42:22–24).

As to the remainder of his opinions criticizing Mr. Elliott's training based on his review of deposition testimony and statements, the Court finds it largely cumulative of the expert testimony of Colon Fulk, who the Court today holds is qualified to give expert testimony on the subjects in question. Accordingly, the Motion to Exclude Mr. Filbert's expert testimony is **GRANTED**.[9]

### 3. Terry Cordray [Doc. 68]

Norfolk Southern next moves to limit or exclude the testimony of Terry Cordray, Ms. Guinn's vocational rehabilitation expert. Ms. Guinn has disclosed Mr. Cordray for the purpose of showing "what impact medical problems subsequent to a work-related injury of July 8, 2015 have had upon her vocational capacities." (Report of Terry Cordray, Mot to Exclude Cordray Ex. D at 1). Mr. Cordray's testimony will therefore purportedly be offered to show damages, not liability. However, in formulating this opinion, Mr. Cordray considered her ability to

---

[9] However, this ruling does not bar Mr. Filbert from testifying entirely. As a lay witness, he is still permitted to give an opinion based on "particularized knowledge garnered from years of experience within the field," so long as the opinion is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003); Fed. R. Evid. 701(c). The Parties may choose to take up the issue of limiting the scope of Mr. Filbert's potential lay opinions closer to trial.

perform the job as a conductor before the injury as a factor for what her earning capacity was prior to the injury:

> Ms. Guinn had received a physical examination to be hired by Norfolk Southern, however did not receive a pre-employment Physical Abilities Test, as currently done at Union Pacific Railroad as a requirement for conductor applicants. As Ms. Guinn was seriously injured on only her second day of job training, it is my opinion there is a reason to doubt her ability to perform the job as a conductor. Therefore, I will not use railroad conductor wages to opine Ms. Guinn's loss of earning capacity.

(*Id*.). At the deposition, on cross-examination by Ms. Guinn's counsel, Mr. Cordray elaborated that he would have recommended Ms. Guinn for additional testing based on her physical condition:

> "I am not a doctor. I have been involved in fitness-for-duty decisions at the Santa Fe and the BNSF [railroad] from 1979 through 1999. It's my opinion that I would have recommended [the Plaintiff] for further physical testing before I would have accepted her into the new hire conductor program."

(Dep. of Terry Cordray at 116). Norfolk Southern objects to this opinion, which appears to go to suitability, for two reasons. First, that it was not disclosed in Mr. Cordray's Rule 26(a)(2)(B) report, and second that it is beyond his qualifications.

The Court disagrees with Norfolk Southern that the opinion was not disclosed in Mr. Cordray's Report. The Report clearly states that "there is a reason to doubt her ability to perform the job as a conductor." (Cordray Report at 1). The

Court cannot think of a clearer way Ms. Guinn could have disclosed Mr. Cordray's opinion.[10]

As to the question of qualification to express the opinion, Ms. Guinn responds by proposing to limit the purpose for which the testimony is offered: "To the extent the railroad objects to Cordray testifying to an opinion that the railroad was negligent for assigning Plaintiff to work as a conductor, he has not expressed that opinion in his report or at his deposition; and [it] will not be a subject matter of his direct testimony at trial." (Resp to Mot. to Exclude Cordray at 3). The Court finds that this concession has largely resolved Norfolk Southern's objection. Mr. Cordray, as a vocational expert, is qualified to opine on her earning capability before and after the incident, subject to proper safeguards to avoid confusing the jury. Accordingly, Mr. Cordray's opinion is **LIMITED** as set forth above. The Court need not determine the proper limiting instruction under Federal Rule of Evidence 105 until closer to trial.

### 4.    Colon Fulk [Doc. 69]

Ms. Guinn has retained Colon Fulk, a railroad industry expert, to express three opinions in this case:

(1)    Norfolk Southern's instructors were "wrong and reckless" by instructing her to do the high handbrake exercise so early in her training;

---

[10] Norfolk Southern has perhaps been a bit trigger-happy with Rule 37. Rule 37(c)'s sanction is meant as a deterrent for discovery abuses, and is not a Swiss Army knife to be deployed in every situation where an expert elaborates on his or her report to the detriment of the opponent.

(2)	Norfolk Southern's instructors knew or should have known that Ms. Guinn's "training and knowledge had not progressed to a level" that would allow her to perform the high handbrake exercise, among the "toughest" tasks on the railroad; and

(3)	"The use of Brake Sticks in the rail industry has eliminated personal injuries of railroad employees."

(Resp. to Mot to Exclude Fulk at 1–2, Doc. 81). Norfolk Southern contends that a fourth opinion was offered at Mr. Fulk's deposition, "that the third rung or 'grab iron' from the top of the railcar's side ladder was bent, which restricted the foot room available to the Plaintiff as she climbed the side ladder and could constitute a violation of the Safety Appliance Act." (Reply Mot. to Exclude Fulk at 1). It appears that there is no dispute as to the inadmissibility of this last opinion, as in her response to the Motion to Exclude , Ms. Guinn stated that Fulk "deferred to a mechanical department expert as to whether it was a violation  . . . [s]o this part of Defendant's motion is moot." (Resp. to Mot. to Exclude Fulk at 2). However, Norfolk Southern seeks to exclude the remaining opinions under Rule 702 and *Daubert*.

Norfolk Southern contends that "Mr. Fulk's training-related opinions should be excluded because they are not the product of Mr. Fulk's reliable application of expertise or methodology to the facts of this case" and that "Mr. Fulk is not

qualified to opine on Norfolk Southern's training." (Mot to Exclude Fulk, Br. at 17–18, Doc. 69-1).[11]

According to his report, Mr. Fulk has had "33 years of 'on board' experience in train operations," including as a "conductor, fireman, brakeman, locomotive engineer," and foreman. (Report of Colon Fulk at 2, Doc. 31-4). He has "supervised training and created start-up training programs for railroad employees." (*Id.*). But Mr. Fulk is not only qualified by knowledge and experience, he is also qualified by training and education. He has taken over "2,475 hours in such subjects as train handling and operations, railroad management, crew training, operating rules, safety, mechanical and the like." (*Id.*). He earned "a diploma from the Railway Educational Bureau after completing in excess of 50 lessons pertaining to railroad subject matters." (*Id.*). Furthermore, and perhaps most relevant to this case, he is a member of the Air Brake Association, as well as a past member of the National Association of Railway Safety Consultants and Investigators. (*Id.*). Judge May permitted him to testify as an expert in rail operations and accident investigation in *Haynes v. Lawrence Transp. Co.*, No. 1:13-CV-4292-LMM, 2015 WL 5601942, at *3 (N.D. Ga. Mar. 24, 2015) ("The Court finds that Mr. Fulk has the requisite experience and educational background which would qualify him to testify as an

---

[11] Norfolk Southern argues for the first time in its Reply brief that Mr. Fulk's opinion should be excluded because he did not review its FRA-approved conductor training program in connection with offering his opinions in this case. (Reply at 2). The Court declines to take up this argument that was not first raised in Norfolk Southern's opening brief.

expert. He has extensive experience in both the private sector and as an expert in legal proceedings.").

Nonetheless, Norfolk Southern argues that Mr. Fulk is not qualified to opine on its training. It argues that Mr. Fulk has not been to the McDonough training facility in 25 years and that Mr. Fulk "does not recall ever assisting with training conductor trainees on mounting equipment to apply and release handbrakes." (Mot to Exclude Fulk, Br. at 18). However, it concedes that "his past experience with Norfolk Southern involved continuing field training of employees who have completed initial training at the McDonough training facility," though not since "the early 1990's." (*Id.*). However, as the Court noted above, Mr. Fulk is qualified not only by his experience, but also by his education and training. The Court accordingly finds that these arguments do not go to Mr. Fulk's qualifications, but instead go to the weight the jury should give his testimony. While the Court expects Norfolk Southern will develop this further on cross-examination, based on the materials provided by Ms. Guinn, the Court finds Mr. Fulk qualified to offer the opinions Ms. Guinn has disclosed in this case.

Norfolk Southern next contends that Mr. Fulk did not employ reliable methodology or analysis to arrive at his opinions, but rather based the opinion on "nothing more than Plaintiff's recorded statement and four of the eight trainees' written statements." Norfolk Southern argues that Mr. Fulk has misinterpreted the evidence, accusing him of "cherry-picking" statements and basing his conclusions "upon the assumption that Plaintiff's statement, as interpreted by Mr. Fulk, is

accurate, while Elliott's statement is not." (Mot. to Exclude Br. at 21, 23). However, upon reviewing the materials cited by Norfolk Southern, the Court concludes that this is "a difference of opinion as to the interpretation of certain evidence that can be handled by cross examination." *Haynes*, No. 1:13-CV-4292-LMM, 2015 WL 5601942, at *3.

Lastly, Norfolk Southern takes issue with Mr. Fulk's statement that "the high handbrake exercise is among the most dangerous tasks on the railroad." It contends that Mr. Fulk does not support this statement with statistics, but rather his "ipse dixit." But this is this is one of the pieces of training that Mr. Fulk logically would be familiar with given his experience, and he may base his testimony on this experience without the need to support it with statistics. Accordingly, the motion is **DENIED**.

### B. Motion for Summary Judgment

Having resolved Norfolk Southern's Motions to Exclude, the Court next turns to its Motion for Partial Summary Judgment. While Ms. Guinn's Complaint only presents one cause of action, the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., Norfolk Southern seeks summary judgment on several theories of liability under that Act.

### 1. FRSA Preclusion of Negligent Training Claim

Norfolk Southern first seeks summary judgment as to Ms. Guinn's negligent training claim on the grounds that it complied with regulations issued under the Federal Railroad Safety Act ("FRSA"), 49 USC § 20101 et seq. Because FRSA's

preemption section states that "[l]aws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable," Norfolk Southern contends that its compliance with its training program approved pursuant to FRA regulation precludes a FELA claim premised on an ordinary, "reasonable care" standard. 49 U.S.C. § 20106(a).

Norfolk Southern points out that every federal court of appeals to consider the issue has held that FELA claims are precluded by FRSA. *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 430 (6th Cir. 2009); *Lane v. R.A. Sims Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001); *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 777 (7th Cir. 2000). In response, Ms. Guinn cites several recent cases which have held that the FRSA does not preclude FELA claims in light of the Supreme Court's decision in *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014). Most recently, Norfolk Southern lost on this issue before the Georgia Supreme Court in *Norfolk S. Ry. Co. v. Hartry*, No. S19G0008, --- S.E.2d. ----, 2019 WL 7046785, at *5 (Ga. Dec. 23, 2019).

In *Hartry*, the Georgia Supreme Court noted as an initial matter that because the case concerned "two federal acts, the preemption doctrine and the express preemption provision in FRSA are inapplicable." 2019 WL 7046785, at *2 (citing *Norfolk Southern R. Co. v. Zeagler*, 748 S.E.2d 846, 859 (Ga. 2013); *Henderson v. Nat'l R.R. Passenger Corp.*, 87 F. Supp. 3d 610, 614 (S.D.N.Y. 2015). Instead, "If FRSA regulations were to bar a FELA negligence claim, it could only

be under the doctrine of preclusion, which deals with the compatibility of multiple federal laws." *Id.* at \*3 (citing *Zeagler*, 748 S.E.2d 846, 859).

The *Hartry* court was not convinced that Congress's objective of national uniformity set forth in FRSA mandated a finding of preclusion, quoting *Pom Wonderful* for the proposition that "Congress not infrequently permits a certain amount of variability by authorizing a federal cause of action even in areas of law where national uniformity is important." *Id.* (citing *POM Wonderful*, 573 U.S. at 117).

In *POM Wonderful*, the U.S. Supreme Court declined to find one federal statute precluded a claim under another statute absent "statutory text or established interpretive principle to support preclusion, including a "congressional purpose or design to forbid such suits." *Id.* (citing *POM Wonderful*, 573 U.S. at 117). The Georgia Supreme Court noted that after *POM Wonderful*, the trend has been against a finding of preclusion, writing that "most courts not bound by FELA precedent that precedes *POM Wonderful* have held that FRSA does not preclude a FELA claim." *Id.* at \*4. The court agreed with the trend, concluding that "[p]ermitting safety-related suits under FELA will enhance, rather than impede, the purpose of FRSA in promoting railroad safety and reducing accidents," and explaining that its holding posed little risk to nationwide uniformity in light of the fact that "FELA claims are based on [a] federal statute and federal common law regardless of where such claims are tried." *Id.* at \*5.

The Court agrees with the well-reasoned opinion of the Georgia Supreme Court in *Hartry* and holds that FELA claims based on an ordinary "reasonableness standard" are not precluded by the FRSA. As such, several factual disputes prevent a finding of summary judgment at this time, including whether Ms. Guinn was improperly instructed to climb to the second to highest rung before transferring to the end ladder,[12] whether Ms. Guinn's condition was such that the trainer should have stopped the exercise, or alternatively, whether Ms. Guinn should have been instructed to attempt the exercise at all.[13]

### 2. Negligent Assignment

Norfolk Southern next moves for summary judgment on Ms. Guinn's claim that it negligently assigned her to perform tasks beyond her physical abilities. "FELA employers also may be liable if they negligently assign employees tasks that are beyond their physical capacities." *Sea-Land Serv., Inc. v. Sellan*, 231 F.3d 848,

---

[12] Norfolk Southern argues in its Reply that the factual dispute about whether Ms. Guinn was instructed to climb to a height above the brake platform before transferring to the end ladder is not material because Ms. Guinn eventually ended up where she needed to be, the brake platform, and only fell thereafter. (Reply to Mot. Summ. J. at 11–12, Doc. 90). However, it is for a jury to decide whether, if indeed directed by Norfolk Southern's trainer, this extra climbing contributed to the circumstances leading to Ms. Guinn's fall.

[13] All of this is not to say that Norfolk Southern's compliance with FRA regulations will not be relevant at trial, including the requirements under 49 C.F.R. § 242.119(e) that a conductor trainee shall "[s]uccessfully complete" Norfolk Southern's "formal initial training program . . . and any associated examinations covering the skills and knowledge the person will need to possess in order to perform the task necessary to be a conductor," and "[d]emonstrate, to the satisfaction of the railroad with input from a qualified instructor, on the job proficiency by successfully completing the tasks necessary to be a conductor." Indeed, compliance with these regulations may provide probative evidence that Norfolk Southern met the relevant standard of care, particularly in light of the fact that Ms. Guinn's proffered experts could not guarantee she would never find herself in a situation where knowing how to release a handbrake by climbing a rail car would be necessary. (*See* Dep. Fulk at 47:20–21 ("There may be times when they'll have to apply or release a handbrake like that.")). It is accordingly in the Parties' interests to seriously work towards a settlement of this matter.

851 (11th Cir. 2000) (citing *Fletcher v. Union Pac. R. Co.*, 621 F.2d 902, 908–09 (8th Cir. 1980)). Norfolk Southern contends that, following the Court's ruling on its motions to exclude expert testimony, no evidence remains to support a claim for negligent assignment. The Court agrees.

Dr. Johanning's equivocal opinion that "[i]t is indeed a question" whether Ms. Guinn was "medically and physically fit to perform the regular work duties of a conductor job," was excluded by the Court as unhelpful to the jury. *See supra*. And Ms. Guinn voluntarily limited the scope of Mr. Cordray's testimony: "[t]o the extent the railroad objects to Cordray testifying to an opinion that the railroad was negligent for assigning Plaintiff to work as a conductor, he has not expressed that opinion in his report or at his deposition; and will not be a subject matter of his direct testimony at trial." (Resp to Mot. to Exclude Cordray at 3). The fact that Norfolk Southern was aware of Ms. Guinn's age, gender, and weight as result of her medical evaluation does not create a jury question as to her suitability in the abstract. Accordingly, the motion for summary judgment as to this theory of liability is **GRANTED**.

### 3. Safety Appliance Act

Lastly, Ms. Guinn contends that Norfolk Southern is liable for causing Ms. Guinn's injury because "the side ladder and the fourth rung down from the top had more of a curve or bend that [sic] the same ladder on a different car," which, according to Ms. Guinn's expert Colon Fulk, may have constituted a violation of the Safety Appliance Act ("SAA"). (Pl.'s SAMF ¶ 39, citing Dep. Elliott at 64–65,

133, 134, 140; Reply Mot. to Exclude Fulk at 1). However, as the Court noted above in the section on Mr. Fulk's report, Ms. Guinn withdrew this aspect of Mr. Fulk's opinion stating that Fulk "deferred to a mechanical department expert as to whether it was a violation . . . [s]o this part of Defendant's motion [to exclude his opinion] is moot." (Resp. to Mot. to Exclude Fulk at 2). The only remaining evidence in the record as to the grab irons is the opinion of Norfolk Southern's witness, Richard French. Mr. French measured the rungs in question and concluded that "[t]he top four rungs or 'grab irons' on the brake end ladders of the railcar on which Norfolk Southern trained the Plaintiff to perform the high handbrake exercise had a minimum clearance (i.e. hand or foot room) of 2 inches or more from the body of the railcar," and accordingly concluded they were in compliance with the SAA.  (Def.'s SUMF ¶ 30, citing Declaration of Richard French, Mot. Summ J. Ex. F at ¶¶ 3, 6, Ex. 2). Plaintiff objected to the "foundation for the measurements taken by French because there is no date when he took the measurements," noting that if the measurements were taken around the time of his affidavit in 2019 "there is no foundation that the rungs were in the same condition in 2019 as at the time of the injury in suit in 2016." (Pl.'s RSUMF ¶ 30). However, the Court need not consider the French declaration at all.[14] In light of Fulk's withdrawal of his opinion as to the potential SAA violation at his deposition, there is no evidence supporting the claim that the ladder was not in compliance

---

[14] None of this is to say (one way or another) that Norfolk Southern can use their purported compliance with the SAA as determined by Mr. French in an affirmative way to defeat the surviving negligence claims.

with the Safety Appliance Act at the time of the accident[15] or that any purported noncompliance was the cause of Ms. Guinn's injuries. Accordingly, summary judgment on this theory of liability is appropriate.

## IV. CONCLUSION

For the above reasons, the Motion to Limit or Exclude the Testimony of Eckardt Johanning, M.D., Msc, Ph.D. [Doc. 66] is **GRANTED IN PART** and **DENIED IN PART**; the Motion to Limit or Exclude the Testimony of Steven Filbert [Doc. 67] is **GRANTED**; the Motion to Limit or Exclude the Testimony of Terry Cordray [Doc. 68] is **GRANTED IN PART** and **DENIED IN PART**; and the Motion to Limit or Exclude the Testimony of Colon Fulk [Doc. 69] is **DENIED**. The Motion for Summary Judgment is **GRANTED IN PART** as to the Negligent Assignment and Safety Appliance Act theory of liability and **DENIED IN PART** as to the Negligent Training theory of liability.

The Court **ORDERS** the parties to attend mediation to be completed within 40 days of the entry of this Order. The parties may mutually agree upon a private mediator, or if unable to reach an agreement, the Court will appoint a private mediator. The parties should notify the Court within seven (7) days of the date of

---

[15] In Plaintiffs Statement of Additional Material Facts, Plaintiff cites the Elliott Deposition for the proposition that "[t]he side ladder and the fourth rung down from the top had more of a curve or bend tha[n] the same ladder on a different car." (Pl.'s SAMF ¶ 39, citing Dep. Elliott at 64-65 (testimony), 133, 134, and 140 (photographs). However, in context, Mr. Elliott is shown three pictures and asked if the fourth rung down in one picture "appear[s] to have more of a curve or more of a bend to it." (Dep. Elliott at 64:21–65:3). Based on the photographs alone, Mr. Elliott answers that it does, but insists that he would not have used a different train car for the exercise. (*Id.* at 65:4–12). That the rung appears bent from a picture does not create a genuine fact dispute where Plaintiff has not endeavored to examine the ladder in question and where there is no evidence in the record that the rung caused the fall.

entry of this Order if they are unable to agree upon a mediator. The parties are **DIRECTED** to file a status report within 5 days of the conclusion of the mediation indicating whether this matter is resolved.

If this case is not settled in mediation, the parties are **DIRECTED** to submit a consolidated pretrial order within 20 days of the filing of their status report. The Clerk is **DIRECTED** to submit this matter to the undersigned if there is no activity in this case within 70 days of the date of entry of this Order

**IT IS SO ORDERED** this 26th day of February, 2020.

AMY TOTENBERG
UNITED STATES DISTRICT JUDGE